OPINION
{¶ 1} Defendant-appellant Jolene Lockard appeals her conviction and sentence from the Licking County Municipal Court on one count of telecommunications harassment. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On June 15, 2006, a complaint was filed alleging that, on June 7, 2006, appellant committed the offense of telecommunications harassment in violation of R.C. 2917.21, a misdemeanor of the first degree. At her arraignment on June 28, 2006, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, a jury trial commenced on October 30, 2006. The following testimony was adduced at trial.
 {¶ 4} Appellant and Matthew Epifano are the parents of a son. Appellant is Matthew's ex-girlfriend.
 {¶ 5} At trial, Becky Miller, the General Manager of Cherry Valley Lodge, testified that she spoke with appellant hundreds of times over the telephone while working at the lodge and that, during some of the conversations, appellant identified herself. Miller testified that, starting in November of 2005, the number of telephone calls to the lodge was disruptive because the lodge was receiving "hundreds and hundreds of phone calls." Transcript at 38. Miller further testified that she was able to identify appellant's voice from speaking with her on the phone and that, on April 27, 2006, she spoke with someone who identified herself as "Jolene" over the phone and told her to quit calling because it was disrupting business. The following testimony was adduced when Miller was asked how the person who called identified herself: *Page 3 
 {¶ 6} "A: She would ask to speak with Matt Epifano in the kitchen. Originally the calls, as they started to come in, were transferred to the kitchen, to him, and then he also spoke with her after the calls were transferred, prior to the June date and again, she had been told numerous times to quit calling, but I had a long conversation with her when I did know it was her. She identified herself and used obscenities with me on the phone and saying that she needed to speak with Matt, because she had a child that was ill and at the hospital, that needed medical attention and she needed to speak with him immediately.
 {¶ 7} "Q: And how did that person identify themselves?
 {¶ 8} "A: That she was Jolene." Transcript at 40.
 {¶ 9} When questioned about the phone call to the lodge on April 27, 2006, Miller testified that appellant asked to speak with Matt because her child was in the hospital and that appellant used obscene language when Miller offered to take a message for Matt. The caller, Miller testified, responded to the name "Jolene".
 {¶ 10} The next witness to testify at trial was Christopher Vest, an employee of Cherry Valley Lodge who worked at the front desk and answered the telephone. Vest testified that the problem with the telephone calls began during Thanksgiving of 2005 and that the person who made the calls had a female voice and asked for Matt Epifano. Vest testified that he then transferred the calls to the kitchen where Matt worked. Vest testified that the lodge was sometimes receiving fifty telephone calls in an hour and a half period and that the majority of the calls were hang-ups. Vest further testified that the telephone calls occurred only when Matt was working at the lodge. *Page 4 
 {¶ 11} When asked how many similar telephone calls he had answered since November of 2005, Vest testified that he had answered "thousands" of calls and that the lodge would receive 100 to 150 calls a day. Transcript at 48. He further testified that the same person's voice was on the line and that the person on the line usually said that there was an emergency involving Matt's son.
 {¶ 12} At trial, Vest was questioned about the events of June 7, 2006. Vest testified that, on such date, he transferred a call to Matt in the kitchen at approximately 3:00 p.m. and that, only a minute or so later, the same person, who identified herself as "Jolene", called again and said that Matt was not in the kitchen. Vest testified that he then offered to take a message back to Matt, but told the caller that he could not transfer the call. According to Vest, the lodge received over 50 hang-up calls between 3:20 p.m. and 4:30 p.m. in addition to other calls from the same person. Vest also testified that the calls only occurred when Matt was working.
 {¶ 13} Matt Epifano testified that he has spoken with appellant several times over the telephone and that he recognized her voice. According to Matt, beginning during Thanksgiving of 2005, appellant began calling him at work constantly. Epifano testified that he asked appellant several times to quit calling him at work.
 {¶ 14} Epifano further testified that, on June 7, 2006, he spoke with appellant while working at the lodge after her call was transferred to him by Christopher Vest. While appellant told him that their son was on the way to the hospital and that there was a medical emergency, Epifano testified that such statements were not true. He further testified that he told appellant to quit calling him at work and making so many harassing *Page 5 
calls to his place of employment, but that appellant called again on June 7, 2006. Epifano testified that he gave a statement to the police after they were notified.
 {¶ 15} At the trial, Carol Thress, the Director of Operations at Cherry Valley Lodge, testified that the lodge started receiving harassing telephone calls from Thanksgiving of 2005 until after a police report was filed on June 7, 2006. The calls ceased as of June 8, 2006. Thress testified that she answered the telephone on June 7, 2006 and, after appellant asked to speak with Matt, repeatedly told appellant to stop calling. According to Thress, the lodge then received 15 or so hang-up calls. Thress testified that the lodge received 52 telephone calls between 3:00 p.m. and 4:30 p.m. that day and that the calls were not ordinary business calls.
 {¶ 16} Lisa Howard, an employee of Cherry Valley Lodge, testified that she was working at the front desk on June 7, 2006 when she answered a telephone call from "Jolene" asking to speak with Matt. Howard testified that of the 52 calls the lodge received that date, some were hang-ups while, during others, she actually spoke with the person, who identified herself as "Jolene", and told her to quit calling. She further testified that the calls stopped for awhile, but then started up again around 10:45 p.m. when the shift was getting ready to end. Howard further testified that when the police arrived at 10:30 p.m. on June 7, 2006, she was on the phone with "Jolene" and that she then handed the telephone over to Patrolman Roger Shaw. Patrolman Shaw testified that the person on the line told him that her ex-boyfriend worked at the lodge and that she needed to speak with him about their child.
 {¶ 17} A log of the telephone calls that the lodge received between 3:00 p.m. and 4:30 p.m. on June 7, 2006, was admitted at trial as Plaintiffs Exhibit 1. *Page 6 
 {¶ 18} At the conclusion of the evidence and the end of deliberations, the jury, on October 30, 2006, found appellant guilty of telecommunications harassment. Pursuant to a Journal Entry filed on November 7, 2006, appellant was sentenced to 90 days in jail with 80 days suspended and was fined $200.00. Appellant also was placed on probation for a period of one year and ordered never to call Cherry Valley Lodge.
 {¶ 19} Appellant now raises the following assignment of error on appeal:
 {¶ 20} "THE CONVICTION OF THE DEFENDANT-APPELLANT WAS OBTAINED WITHOUT SUFFICIENT EVIDENCE BEING PRESENTED TO ESTABLISH EACH AND EVERY ELEMENT OF THE OFFENSE IN QUESTION."
 I {¶ 21} Appellant, in her sole assignment of error, argues that her conviction for telecommunications harassment is against the sufficiency of the evidence. We disagree.
 {¶ 22} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at syllabus 2.
 {¶ 23} Appellant was convicted of telecommunications harassment in violation of R.C. 2917.21(A). Such section states, in relevant part, as follows: *Page 7 
 {¶ 24} "(A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following: . . .
 {¶ 25} "(5) Knowingly makes the telecommunication to the recipient of the telecommunication, to another person at the premises to which the telecommunication is made, or to those premises, and the recipient or another person at those premises previously has told the caller not to make a telecommunication to those premises or to any persons at those premises."
 {¶ 26} Appellant, in the case sub judice, specifically contends that there was insufficient evidence that she was the person who called Cherry Valley Lodge on June 7, 2006 and was told to stop calling the lodge but disregarded that directive. We disagree.
 {¶ 27} As is set forth in detail above, Matt Epifano testified that, on June 7, 2006, Christopher Vest transferred a telephone call to him from appellant. There was testimony adduced at trial that Epifano knew appellant's voice, having been involved in a relationship with her, and had spoken with her on the telephone before. Epifano testified at trial that appellant had been harassing him at work via telephone calls since Thanksgiving of 2005 and that he repeatedly told her, including on June 7, 2006, to stop calling.
 {¶ 28} At trial, employees of the lodge testified that the harassing telephone calls from someone identifying herself as "Jolene" began during Thanksgiving of 2005. There was evidence that they recognized appellant's voice, having transferred calls *Page 8 
from her to Matt Epifano before. Testimony also was adduced that appellant responded to the name "Jolene" and that "Jolene", during the calls, indicated that she wanted to speak with Matt about a medical emergency concerning their son. There was testimony that the telephone calls only occurred when appellant knew Matt Epifano was working and that the calls ceased after the police were notified on June 7, 2006.
 {¶ 29} In addition, testimony was adduced at trial that when Patrolman Shaw spoke with the caller on June 7, 2006, she told him that she was Matt's ex-girlfriend and that the two shared a son. The patrolman, in his report, indicated that the caller identified herself as "Jolene."
 {¶ 30} In short, based on the evidence set forth in detail above, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant was the person who made harassing telephone calls to Cherry Valley Lodge on June 7, 2006, that appellant was told to quit making the calls, and that appellant disregarded such warning. *Page 9 {¶ 31} Appellant's sole assignment of error is, therefore, overruled.{¶ 32} Accordingly, the judgment of the Licking County Municipal Court is affirmed.
Edwards, J., Farmer, P.J., and Delaney, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Municipal Court is affirmed. Costs assessed to appellant. *Page 1